77 N.J. Super. 448 (1962)
186 A.2d 715
JAMES S.P. BECK, PLAINTIFF,
v.
NUTRODYNAMICS, INC., A CORPORATION OF THE STATE OF MARYLAND, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided December 7, 1962.
*449 Mr. Martin L. Duyk for plaintiff James S.P. Beck (Messrs. Furst, Furst & Feldman, attorneys).
*450 Nutrodynamics, Inc. not represented by counsel.
Mr. Irwin I. Kimmelman for claimant Ivers-Lee Company (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
YANCEY, J.C.C.
This proceeding on motion is brought before the court by the Ivers-Lee Company, a corporation of the State of Delaware, duly authorized to do business in the State of New Jersey, and having a place of business in this State, as intervening complainant. The Ivers-Lee Company, hereinafter referred to as Ivers-Lee, claims a paramount and prior property right in and to certain goods levied upon by the Sheriff of Essex County pursuant to a writ of attachment procured by the plaintiff, James S.P. Beck, residing at East Cherokee Hill, Tuscaloosa, Alabama.
Plaintiff Beck brought suit by attachment against defendant Nutrodynamics, Inc. in three counts based on Nutrodynamics, Inc.'s failure to pay certain loans. Nutrodynamics, Inc. is a corporation of the State of Maryland not authorized to do business in the State of New Jersey, and maintains no office within this State.
Prior to the commencement of suit by plaintiff Beck, Nutrodynamics, Inc. delivered to Ivers-Lee a drug product in completed pill form. Ivers-Lee was to place the pills in foil packages and then in shipping containers suitable for delivery to customers of Nutrodynamics, Inc. The packaged pills were in the possession of Ivers-Lee when Beck instituted his suit by attachment. Approximately 193 cartons of the packaged pills were levied upon and taken into possession by the sheriff. Ivers-Lee now claims an artisan's lien to the goods by virtue of materials, labor and services furnished, and brings this motion to determine the priority of its claim.
In New Jersey there is no statute with reference to an artisan's lien. Such lien stands as at common law. The only statute having any applicability to an artisan's lien in New Jersey is N.J.S. 2A:44-32, which states:
*451 "A lien held by a person upon chattels in his possession for labor or materials furnished in the repair or construction thereof, shall not be waived, merged or impaired by the recovery of a judgment for the moneys due for such labor or material, but the lien may be enforced by levy and sale under execution upon the judgment."
Two other statutes, N.J.S. 2A:44-33 (sale by public auction to enforce lien) and N.J.S. 2A:44-34 (proceeds of sale; balance) apply only to the condition of sale once a lien has been perfected under the common law.
N.J.S. 2A:44-32, being merely declaratory of the common law, must be interpreted in accordance with common law principles. In Re Supreme Lingerie Co., 90 F. Supp. 456 (D.C.D.C. 1950).
A common law lien is the right to retain the possession of personal property until some debt due on or secured by such property is paid or satisfied. Penn Fire Ins. Co. v. Rinaolo, 108 N.J. Eq. 167 (E. & A. 1931). This lien is one that arises by implication of law and not from express contract. Cincinnati Tobacco Warehouse Co. v. Leslie, 117 Ky. 478, 78 S.W. 413 (Ct. App. 1904). It is founded on the immemorial recognition of the common law of a right to it in particular cases, or it may result from the established usage of a particular trade, or from the mode of dealing between the parties. Deitchman v. Korach, 330 Ill. App., 365, 71 N.E.2d 367 (App. Ct. 1947).
The right to this common law lien applies to a bailee, to whom goods have been delivered. To entitle a bailee to a lien on the article bailed, more is necessary than the mere existence of the bailment relationship. The bailee must, by his labor and skill, contribute to the improvement of the article bailed. The bailee having thus performed, the well-settled rule of the common law is that a bailee (artisan) who receives in bailment personal property under an express or implied contract to improve, better, manufacture or repair it for remuneration, and enhances the value of such property by his skill, labor, or materials employed in such undertaking, has a specific lien on such property. This lien may be enforced *452 against the bailor while the property remains in the bailee's possession, and until the reasonable value of his labor, skill, and expenses is paid. Sullivan v. Clifton, 55 N.J.L. 324 (E. & A. 1893); White v. Smith, 44 N.J.L. 105 (C.P. 1882).
The first question before the court, therefore, is whether the kind of work done by Ivers-Lee is such as to support its assertion to an artisan's lien. The undisputed facts set forth are that Nutrodynamics, Inc. delivered to the claimant a huge quantity of loose, unpackaged capsules so that the same could be rendered saleable by having the claimant prepare, mark and package the capsules and place the packages in cardboard mailing containers suitable for delivery to the customers of Nutrodynamics, Inc. The claimant, Ivers-Lee, agreed to render the service and labor and to supply the materials necessary to accomplish the foregoing. The claimant did in fact supply such labor and packaging materials. This work and materials have become assimilated into the final product, and have enhanced the value of the heretofore loose unpackaged pills.
The case of O'Brien v. Buxton, 9 Misc. 876, 156 A. 17 (Cir. Ct. 1931), dealt with a lien on goods for personal services rendered and for repairs to the goods. The court stated, at page 878, 156 A., at page 18:
"A workman who by his skill and labor has enhanced the value of a chattel, under an employment * * * has a lien on the chattel for his reasonable charge * * *."
The lien arises from the rendering of the service, and if such service be not paid for, there is a right to detain. The court further stated:
"* * * It is the natural outcome of the transaction wherein one takes his chattel to another with whom he contracts for the performance by the latter of some service upon it for its betterment."
It is to be concluded from the foregoing that the work done by Ivers-Lee did enhance the value of the product.
*453 Counsel for plaintiff contends that a common law lien does not attach where the contract makes payment a condition precedent to delivery, and that no possessory lien exists in an artisan where payment is a condition of redelivery. 8 C.J.S. Bailments, § 35, p. 435. True, the existence of an artisan's lien is inconsistent with a credit relationship between the parties. But the voluntary extension of credit for some deliveries under an entire contract does not negate an artisan's lien against other property withheld because of nonpayment.
The question as to whether a lien could exist where the relationship of the parties was one based on a contract for credit was settled in the case of In the Matter of Tele King Corp., Debtor, 137 F. Supp. 633, 634 (S.D.N.Y. 1955), where the court stated:
"The voluntary extension of credit for some deliveries under an entire contract does not vitiate an artisan's lien against other property withheld because of nonpayment."
In the case at bar Ivers-Lee was to receive payment before shipment of the completed product. The fact that some payment was made in advance, the balance to be paid at a later date, did not destroy the lien. Ivers-Lee, after having performed the work as per the agreed contract, was entirely within its rights in demanding payment before delivering to Nutrodynamics, Inc. the foil-packed pills. The rule is that an artisan is entitled to retain the property serviced, the lien attaching to the goods to the extent of the whole amount due for work done upon all of the goods.
As to the contention that the lien was lost when the goods were given over to the sheriff under the writ of attachment, it is to be noted that a lien is lost only by the lienholder's voluntary and unconditional surrender of possession or control of the property. Lanterman v. Luby, 96 N.J.L. 255 (E. & A. 1921). For Ivers-Lee to resist would have placed it in contempt of the order of the court.
*454 For the reasons above stated and in the absence of express language in our lien statute, I find that the work and labor expended by the Ivers-Lee did enhance the value of the product, and I further find that Ivers-Lee has a valid common law lien to the goods for the balance now due and owing.
Submit appropriate order.