**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5611-15T3

WELLS FARGO BANK, N.A.,

    Plaintiff-Respondent,

v.

MARCIA A. HARRIS, her heirs,
devisees, and personal
representatives and his/her,
their, or any of their
successors in right, title
and interest,

    Defendant-Appellant,

and

MR. HARRIS, HUSBAND OF MARCIA A.
HARRIS, his heirs, devisees, and
personal representatives and
his/her, their, or any of their
successors in right, title and
interest and UNITED STATES OF
AMERICA,

    Defendants.

---

Submitted December 11, 2017 — Decided July 9, 2018

Before Judges Ostrer and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Bergen County, Docket No.
F-046925-10.

Joshua L. Thomas, attorney for appellant.

Reed Smith LLP, attorneys for respondent (Henry F. Reichner, of counsel; Siobhan A. Nolan, on the brief).

PER CURIAM

In this mortgage foreclosure case, defendant Marcia Harris appeals from (1) the trial court's order conditionally reinstating the complaint of plaintiff Wells Fargo Bank, N.A., after it had been dismissed for failure to prosecute; and (2) the trial court's order granting summary judgment in Wells Fargo's favor. As the trial court did not abuse its discretion in reinstating the action, and no genuine issues of material fact preclude Wells Fargo's right to foreclose, we affirm.

On May 22, 2006, Harris borrowed $543,000 from World Savings Bank, FSB, to purchase a residential property in Englewood. The thirty-year note was secured by a mortgage on the property. The following year, Harris borrowed an additional $150,000 from World Savings, on a home equity line of credit, secured by a mortgage on the Englewood property.

That same year, the federal Office of Thrift Supervision confirmed in correspondence that World Savings amended its bylaws and charter to change its name to Wachovia Mortgage, FSB, effective December 31, 2007. Almost two years later, Wells Fargo acquired

2

Wachovia. The acquisition was confirmed in a January 7, 2013 letter from the United States Comptroller of the Currency.

Harris provides no competent evidence to dispute Wells Fargo's contention that both obligations have been in default since August 15, 2009. Wells Fargo served its notice of intention to foreclose in a timely manner. The matter was automatically stayed from July 27, 2011, until February 8, 2012 by Harris's Chapter 13 bankruptcy proceeding. On March 14, 2012, after the automatic stay was lifted as to Wells Fargo's secured interest, Harris filed an answer to the foreclosure complaint alleging that Wells Fargo lacked standing because it was neither the original mortgagee nor an assignee of the mortgage.

Wells Fargo then moved for summary judgment, which the trial court granted on August 24, 2012, finding no genuine factual issues about either Wells Fargo's standing or Harris's default status. The trial court also instructed that Wells Fargo could request an entry of final judgment through the Office of Foreclosure on an uncontested basis. However, Wells Fargo failed to request final judgment and the Office of Foreclosure dismissed the case for lack of prosecution on December 20, 2013.

On March 20, 2015, Wells Fargo moved for reinstatement, arguing that changes to Rule 4:64, establishing new certification requirements, took time to implement firm wide. Despite Harris's

opposition, the trial court reinstated the action under Rule 4:64-8 after finding that Wells Fargo established good cause and Harris was not prejudiced since she was living in the home rent free.

But, Wells Fargo failed to move for final judgment. Again over Harris's opposition, the court on October 9, 2015, gave Wells Fargo another 120 days to move for final judgment. Wells Fargo failed to act within the allotted time, and requested yet another extension on February 19, 2016. Harris opposed the motion, arguing the case should be dismissed since all the delays were Wells Fargo's fault. As to good cause, Wells Fargo argued it had yet to finalize the certification of amount due. In granting the motion, the judge reasoned that forcing Wells Fargo to start over was too harsh a remedy. The judge granted Wells Fargo a one hundred day extension to move for final judgement.

Finally, Wells Fargo complied and moved for final judgment on April 8, 2016, seeking $989,974.47 as the total amount due. Over Harris's objection, the trial court entered final judgment, specifying that Harris owed $543,000 as the principal due on the first mortgage, $150,000 on the home equity line of credit, plus $7,500 in attorney's fees, combined with interest, for a total amount due of $989,974.47. This appeal followed.

We review de novo the trial court's grant of summary judgment, applying the same familiar standard that governs the trial court,

Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010), but we deferentially review the trial court's discretionary decision to grant a motion to reinstate a complaint, and will act only to prevent an injustice, St. James AME Dev. Corp. v. City of Jersey City, 403 N.J. Super. 480, 484 (App. Div. 2008).

Reinstatement of a foreclosure action following a dismissal for failure to prosecute "may be permitted only on motion for good cause shown." R. 4:64-8. We have found no reported decision that explains the "good cause" requirement, but the rule's language "generally follows Rule 1:13-7." See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:64-8 (2018). However, Rule 1:13-7 grants a party ninety days to seek reinstatement for "good cause," after which the party must show "exceptional circumstances." By contrast, Rule 4:64-8 includes no such ninety-day period. Nonetheless, as for the meaning of "good cause," we may presume that the Rule's drafters "used the word in the later [rule] in the same sense as in the . . . earlier [rule]." Bank of Montclair v. McCutcheon, 107 N.J. Eq. 564, 567 (Prerog. Ct. 1930) (referring to statutory interpretation).

Rule 1:13-7 is an "administrative rule designed to clear the docket of cases that cannot, for various reasons, be prosecuted to completion." Mason v. Nabisco Brands, Inc., 233 N.J. Super. 263, 267 (App. Div. 1989). "Notwithstanding the adoption of the

good cause standard, absent a finding of fault by the plaintiff and prejudice to the defendant, a motion to restore under the rule should be viewed with great liberality." Ghandi v. Cespedes, 390 N.J. Super. 193, 197 (App. Div. 2007).

The delay in filing the final judgment with the Office of Foreclosure was clearly attributable to Wells Fargo. The court allowed reinstatement of the complaint on the theory that Harris would not suffer any prejudice. The court reasoned that Harris was living rent free in the home while the foreclosure proceedings continued. Additionally, dismissing the action would not have secured any property rights for Harris; the residence would have remained encumbered, and the mortgage would have remained in arrears. Wells Fargo apparently would have had every right to reinstitute the foreclosure action since Harris does not argue that the statute of limitations has run. See N.J.S.A. 2A:50-56.1. Thus, the trial court did not abuse its discretion in reinstating the complaint.

As for the multiple extensions of time, "[a] court may exercise broad discretion in controlling its calendar." State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012), aff'd o.b., 216 N.J. 393 (2014). We will not disturb the discretionary ruling unless it was "clearly unreasonable" and "prejudice[ed] . . . the rights of the party complaining." Smith v. Smith, 17 N.J. Super.

128, 133 (App. Div. 1951). The trial judge determined that judicial economy warranted an extension of time, rather than dismissal of the case without prejudice and returning a six-year litigation back to square one. This was not an abuse of discretion, particularly since Harris did not suffer any prejudice.

We turn next to Harris's substantive arguments. "The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994). Harris presents no competent evidence to contest the first two elements. Rather, she argues Wells Fargo lacks standing because World Savings, not Wells Fargo, is the original mortgagee; therefore, only World Savings has standing to foreclose.

The legal effect of a merger between two banking institutions is that "the property and rights of [the] merging bank . . . vest in the receiving bank without further act or deed," and "the rights and obligations of [the] merging bank shall become the rights and obligations of the receiving bank." N.J.S.A. 17:9A-139(1), (3).

We specifically addressed the merger between Wachovia and Wells Fargo in Suser v. Wachovia Mortg., FSB, 433 N.J. Super. 317,

321 (App. Div. 2013). The plaintiff sought to quiet title by, among other things, removing a mortgage recorded by World Savings. Id. at 320. We rejected the plaintiff's challenge to Wells Fargo's standing, stating:

> Wells Fargo's authority to seek foreclosure of the World Savings mortgage was [not] based on an assignment. Instead, Wells Fargo asserted, without substantial contradiction, that the original mortgage holder World Savings Bank, FSA changed its name to Wachovia Mortgage, FSB, effective December 31, 2007, and that Wachovia was acquired by and merged into Wells Fargo effective November 1, 2009. . . . Wells Fargo's right to enforce the mortgage arises by operation of its ownership of the asset through mergers or acquisitions, not assignment. Accordingly, plaintiff's assertions regarding standing have no bearing on Wells Fargo . . . .
>
> [Ibid.]

Here as well, Wells Fargo has provided sufficient and undisputed documentation that it acquired and merged with Wachovia, formerly World Savings. Therefore, Wells Fargo has standing to foreclose without proof of a formal assignment.

Harris argues for the first time on appeal that the final judgment of foreclosure should be vacated under Rule 4:50-1(a), (b), and (c), because Wells Fargo's calculations of the final amount due were incorrect. As Harris could have raised this issue before the trial court, and the issue does not involve the trial court's jurisdiction or a significant public policy matter, we

decline to address it.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Harris's remaining argument regarding rescission of the loan under the Truth in Lending Act, 15 U.S.C. § 1601 to § 1667, lacks sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION